**ACTV, INC. and HyperTV Networks, Inc., Plaintiffs,**

v.

**THE WALT DISNEY CO., ABC, Inc., and ESPN, Inc., Defendants.**

No. 00 Civ. 9622(JSR).

United States District Court, S.D. New York.

May 24, 2002.

Robert Neuner, Neil Sirota, Paul Ragusa, Baker, Botts, L.L.P., New York City, for plaintiffs.

James W. Quinn, Steven D. Glazer, Steven J. Rizzi, Beth Oliak, Weil, Gotshal & Manges LLP, New York City, for defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

Plaintiffs ACTV, Inc. and HyperTV Networks, Inc. (collectively, "ACTV") are the owners and exclusive licensees of U.S. patents nos. 5,781,181 (the " '181 patent"), 5,774,664 (the " '664 patent") and 6,018,768 (the " '768 patent"), which disclose a system for synchronizing Internet programming, drawn from sites throughout the World Wide Web, with video and television programming. Defendants The Walt Disney Company, ABC, Inc., and ESPN, Inc. (collectively, "Disney") offer certain subscribers a system that allows them to syn-

chronize certain Disney television programs with certain Disney web sites, so that, for example, a viewer can not only watch a Disney quiz show but also "play along." In the instant action, ACTV, claiming the differences between the two systems are immaterial, sues Disney for inducing and contributing to infringement of the above listed patents. Disney responds by saying the differences are substantial, so that there is no infringement. Disney further asserts, by way of affirmative defenses and also by what it denominates as "counterclaims," that ACTV's patents are invalid and/or unenforceable.

Following this Court's construction of the patent claims in issue, *see* Order dated October 26, 2001, Supplemental Order dated October 31, 2001, and Memorandum dated May 13, 2002 (familiarity with all of which is here assumed), Disney moved for summary judgment on ACTV's claims, and ACTV cross-moved for summary judgment on Disney's counterclaims. While it has taken the Court some time to wade through the parties' voluminous submissions on these motions, the Court concludes that, in the end, there is a simple issue that resolves the case.

■ ACTV's system is global in its reach and methods. It contemplates a system for synchronizing video and television programming with a wide array of Internet resources drawn from sites throughout the World Wide Web. *See, e.g.,* '181 patent at col. 1, lines 61 to 67; '664 patent at col. 1, line 65 to col. 2, line 4; '768 patent at col. 1, line 66 to col. 2, line 5. Accordingly, each of the patent claims in issue includes means for receiving and decoding "URLs" (Uniform Resource Locators), *i.e.,* complete site addresses, specifying both protocol type and resource location, that enable one to access sites throughout the Internet. *See* Memorandum, May 13, 2002, at 7.

In contrast, the Disney system is a closed system that limits the user to Disney programs and Disney sites. As a result, the Disney system need not, and in fact does not, transmit URLs to its users, but instead transmits the much more limited file names that identify specific information stored on one of two Disney origin servers. Thus, subscribers to Disney's system are, by design, limited to Disney sites, while the ACTV system, by design, allows users to access the "vast information resources of the Internet," '181 patent, col. 1 at lines 57–58.

While ACTV now tries to minimize this fundamental difference, at the time that ACTV applied for its patents it expressly distinguished its system on this basis from a simpler but more limited system called Knee (U.S. patent no. 5,589,892) that was part of the prior art. *See* Declaration of Stephen Rizzi, dated November 14, 2001, Ex. F (the response of ACTV's applicant to the patent examiner's initial remarks) at 13–14. Thus, for example, in responding to the patent examiner's statement that Knee discloses the receipt of programming that contains video, audio, and resource locators, ACTV's applicant stated that while the "so-called resource locators disclosed in Knee provide information about a product or service, they do not provide . . . uniform resource locators (URL) which are *addresses* designat[ing] Web sites." *Id.* at 13 (emphasis in original). ACTV's applicant then went on to state as follows:

[T]here is a fundamental difference between Knee and applicant's invention. In Knee, the user site does not send a request to remote Web sites requesting information, as in applicant's invention. Instead, all data feeds are received at a single location, such as a cable headend. In Applicant's invention, on the other hand, Web page requests must be sent from each workstation to the Internet sites disclosed by the URL's for the

Internet information segments. There is simply no such capability disclosed by Knee.

*Id.* at 13–14. This very same "fundamental difference" distinguishes ACTV's system from Disney's.

 In order to find infringement, "the accused device must meet every limitation of the claim, either literally or by equivalents." *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed.Cir.1991). Since, as noted, each of ACTV's asserted claims expressly requires a means for receiving URLs and a means for decoding URLs, while Disney's system does not use either means, literal infringement is foreclosed. *See, e.g., Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991) ("the failure to meet a single limitation is sufficient to negate infringement of the claim"). Likewise, ACTV cannot avail itself of the doctrine of equivalents, for the presence of means to receive and decode full Internet addresses is a fundamental difference between the two systems and goes to the heart of what makes ACTV's system a novel, useful, and patentable invention especially in comparison with prior closed systems like Knee or subsequent closed systems like Disney's. *See, e.g., SciMed Life Systems v. Advanced Cardiovascular Systems*, 242 F.3d 1337, 1346 (Fed.Cir. 2001) ("[B]y defining the claim in a way that clearly excluded certain subject matter, the patent implicitly disclaimed the subject matter that was excluded and thereby barred the patentee from asserting infringement under the doctrine of equivalents.")

Accordingly, defendants' motion for summary judgment is granted and the Complaint dismissed with prejudice. While, correspondingly, plaintiffs' cross-motion is denied, defendants' counterclaims must nonetheless now be dismissed, without prejudice, as moot.

Clerk to enter judgment.

SO ORDERED.